## Case No. 4,326.

### In re ELDER.

[1 Sawy. 73; [1] 3 N. B. R. 670 (Quarto, 165); 17 Pittsb. Leg. J. 178; 3 Am. Law T. 140; 2 Chi. Leg. News, 241; 1 Am. Law T. Rep. Bankr. 198.]

District Court, D. Nevada.   March 28, 1870.

R. S. Mesick, for petitioners.
T. H. Williams and W. E. F. Deal, for respondents.

HILLYER, District Judge.   George Elder was adjudged a bankrupt on his own petition, on the thirtieth day of October, A. D., 1869. On the twenty-fifth of November, Henry Vansickle made proof before the register of a debt against Elder's estate amounting to $17,025.49. No objection to the proof was made before the register. Subsequently, the register being about to transmit the list of claims proved to the assignee, for the purpose of paying a dividend declared, Randall & Fox, two creditors of the estate, petitioned this court to have the claim of Vansickle disallowed and rejected, except as to the sum of $126.20, upon the following alleged grounds, viz.:

1. That the deposition of Vansickle, made in proof of his claim, does not state or set forth any consideration for any portion of said claim, except said $126.20.

2. That said claim is founded in fraud and illegality; in this, that there was not due said Vansickle, at the time of making his proof, from said bankrupt, or said estate, any sum above $6,000, and that this was well known to Vansickle when he swore to his proof.

Upon the day set for hearing, Vansickle, by leave of the court, amended his proof by stating, or purporting to state, a consideration for his claim. To the amended proof, Randall & Fox urge the same objections made against the original.

The objection to the original proof was well taken, and the claim must have been

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

rejected 'if it had not been amended. The bulk of the claim is evidenced by eight promissory notes, and the statement of the consideration for which the first note was given, is as follows: "That between the thirteenth day of April, A. D., 1865, and the thirteenth day of April, A. D., 1866, deponent sold and delivered to said George Elder, at Genoa, Douglas county, hay, barley and merchandise, and furnished board to said Elder for the agreed price of $2,300 United States gold coin." The consideration of the other seven notes is stated in substantially the same manner.

To entitle a claimant against the estate of a bankrupt, to have his demand allowed, it must be verified by a deposition in writing, on oath or solemn affirmation before the proper register or commissioner, setting forth the demand, the consideration, and other matters not necessary to notice now; "and no claim shall be allowed, unless all the statements set forth in such deposition, shall appear to be true." Bankrupt Act, § 22. This proof, if satisfactory to the register, is to be delivered to the assignee, who shall examine the same, and compare it with the books and accounts of the bankrupt and register in a book, "the amount and nature of the debt." Id.

Certainly, the consideration ought to be so stated, that the assignee upon comparing the claim and books, can determine whether the claim proved, and the books agree. And here it is proper to notice what appears to be a serious defect in the bankrupt act. In this case, at the creditor's election, Henry Vansickle was chosen assignee. Now, is it to be expected that, if there be any illegality or fraud in his claim, he would compare it with the bankrupt's books, or apply to the court to have it rejected under section 22, or that, if his claim should be rejected, he would, after appealing, plead and answer his own statement under section 24? It is far more likely that he would make use of his own position to cover up the fraud or illegality, if any there was.

In order to secure perfect fairness and impartiality, the assignee should either be an officer of court, or selected from among other persons than creditors of the estate. But what was the object of the law maker in requiring the consideration to be stated in the deposition? The answer to this will help to ascertain how particular the statement of it must be. One object, no doubt, was to enable the register to say whether it is legal in its nature, and will support a demand or promise. Another, to show him whether or not the demand is unliquidated, and must be ascertained by assessment before its allowance. Another, to afford the assignee means for comparing the books of the bankrupt with the proof. But the chief object, no doubt, was to put a check upon the proof of fraudulent and fictitious claims, by requiring the claimant to give such a particular and definite statement of the consideration, as would enable other creditors to trace out, discover, and expose the fraud or illegality of the claim, if any existed.

The requirement is intended to be for the benefit of all other creditors of the estate and the bankrupt, and to prevent fraud. If the statement of the consideration is so general and indefinite, as to afford no aid to the creditors in their inquiry as to the fairness and legality of the claim, it does not effect the object of the law, and must be held insufficient.

Touching the question now being considered, I can find no adjudications directly upon this part of the bankrupt law. I must, therefore, be guided by the evident purpose of the law, and such decisions in analogous cases as may throw light upon the question.

Upon a confession of judgment in California and New York a statement is required which must "state concisely the facts out of which the indebtedness arose, and shall show that the sum confessed therefor is justly due." Practice Act Cal. § 374; 3 Rev. St. N. Y. Under this provision it is held that the failure to state the amounts due severally for goods and for money itself would be fatal. Such an averment would be insufficient in a complaint. Cordier v. Schloss, 18 Cal. 576. The mere statement that the debt is by note is insufficient. Id.; Plummer v. Plummer, 7 How. Pr. 62. In Schoolcraft v. Thompson, 7 How. Pr. 446, the amount of the debt was stated, and then that it arose out of the following facts: "For goods, wares and merchandise sold and delivered to me by Messrs. Schoolcraft & Co., Albany, of which firm plaintiff is a member; the goods were purchased by me in the years 1851 and 1852." The supreme court of New York says of this statement: "This is far short of a compliance with the statute. One important object was, that other persons than parties to the judgment might by reference to the statement, be informed of all the material facts relating to the indebtedness, and thus defeat fraud, if any. The statement is much too general; no essential beneficial purpose would be answered by such a statement, as to the nature, consideration and origin of the debt. The kind of goods, wares and merchandise, the quantities, the prices charged for them, the times or near the times in the years stated, when the purchases were made, ought to be shown."

The New York statute regulating confessions of judgment by warrant of attorney, required "a particular statement and specification of the nature and consideration of the debt or demand on which such judgment is confessed," and it was held that a specification so general as a common count, was not sufficient; that it ought to be as particular and precise as a bill of particulars. If for goods sold, the kind, quantity and price of goods, and the time of sale, as in a bill

of parcels. Lawless v. Hackett, 16 Johns. 149.

The court of appeals held this language to be applicable to a statement under the first mentioned law. Chappel v. Chappel, 12 N. Y. 215. In this case, the confession or statement states that the debt arose out of a promissory note. This was held insufficient; the court saying: "The statute looks not to evidence of the demand, but to the facts in which it originated; in other words, to the consideration which sustains the promise." To the same effect as the foregoing, numerous other cases might be cited. All of them treat the words "fact out of which the indebtedness arose," as equivalent to "consideration," as was done in the case last cited.

Regarding the object of these state laws as identical with that of section 22 of the bankrupt law, these decisions are entitled to weight. Indeed, the purpose of the framers of the bankrupt law to secure, in every proceeding under its provisions, the utmost honesty and good faith on the part of the bankrupt and creditors, is disclosed in almost every section. The deposition required of a claimant on proof of his debt, by section 22, is much more searching, and descends more into particulars, than the statement on confession of judgment before noticed. All the statements set forth in the deposition must appear to be true. That is, as I understand it, the facts must be stated with so much certainty, particularity and detail, as that upon its face, without extrinsic proof, the deposition shall appear to the register to be true. The more the deposition goes into details of time, place, quantity and price, the more it will appear to be true, and the less likelihood there will be that a fraudulent or illegal claim will be presented, or if presented, allowed; for the deponent seeking to prove an illegal or fraudulent claim, will always take refuge in generalities, and will reconcile the oath with his conscience by some specious reason, knowing the difficulty of convicting him of falsehood when subjected to an examination. But if he must make oath as to time, place, quantity, quality, price, etc., he will not be likely to state anything but the truth, for every detail stated increases the probability of detection if it be untrue.

[Let a claimant, for instance, swear that the bankrupt is indebted to him in a certain amount, that this debt is evidenced by a promissory note, and that the consideration is hay furnished to the bankrupt, without further particulars, and that the amount is justly due. Every statement might, in one sense, be true, and yet the whole claim be simulated and false, and gotten up expressly to give to the claimant a preference. The claimant would swear the amount was justly due, because the debtor had given him his promissory note, and that the consideration was hay, although the quantity might be so small as to show fraud, if duly stated, and have been given for the purpose of enabling the claimant to flatter himself that he was swearing to the truth.][2]

I have gone thus at length into this question because it is new in this court, and because it is important now that a rule should be fixed which is correct and as certain as the nature of the case will admit, for the infinite variety of considerations which will support a promise renders it impracticable to state an inflexible rule, or anything more than the principle to be applied to all cases.

Looking then at the object of the law and the reasons for requiring a statement of the consideration in the deposition, I consider that a general statement that the consideration of a demand is goods, wares and merchandise, or hay, barley and board, is not sufficient; that the kind of goods, the quantity, the price, and near the date of sale, should be stated; that the quantity of hay, or barley, the price, and the time of delivery, if delivered at one time, or if delivered continuously through a period of time, that period, should be stated. If the proof falls short of this, the register ought not to consider it satisfactory, and should withhold his approval. He has the right, and it is his duty to permit and require the deposition to be amended, subject always to the provision of section 4, which requires all issues of law or fact raised and contested by any party to the proceedings, to be adjourned into court for decision.

If the proof is not satisfactory to the register, it should be made so before it is signed by the deponent or transmitted to the assignee. Where, as in this case, the proof has been passed as satisfactory by the register, and the question of due proof or not, comes up before the court, upon the application of creditors to have the claim rejected, if the evidence taken before the court, shows the consideration to be legal and sufficient, the claim will not be rejected. Such, I consider, the fair construction of the last clause of section 22. If defects in the deposition have justified the application, costs can be imposed upon the party in fault.

Tested by the above rule, neither the original nor amended deposition of Vansickle is sufficient. Whether the proof taken before the court has shown the consideration of his claim to be fair and legal, will be determined in considering another branch of this case. It is alleged by the creditors, that note No. 8 is illegal. This note was given by Elder, on the 29th day of October, the day before the petition of Elder was filed, as is said, for a balance of account due that date. It appears from the books and other testimony, that from the 20th to the 29th of October, Elder was charged on the books of Vansickle, double the prices for hay, oats and barley, that other customers were, and that these

---

[2] [From 3 N. B. R. 670 (Quarto, 165).]

charges were made on a currency basis. A charge appears on the blotter, dated October 29, to Elder for $234.80 worth of feed, the whole of which is included in this note.

The testimony shows that this was the estimated amount of feed which would be used by Elder during the remainder of the month of October and had not at the time of the making of the note been delivered, and that a large portion of it (more than one half) never was furnished to Elder. The double price was charged in pursuance of an agreement made between Lynds (Vansickle's agent) and Elder. By reason of the double price charged, changing in currency and the including of the hay and grain not furnished, the amount of this note is more than double.

I think the testimony shows a large portion of the consideration of this note to be founded in illegality; and in accordance with a well settled principle of law, this illegality of a part of the consideration makes the whole note void and unavailable so far, at least, as the interests of creditors are concerned. 1 Pars. Cont. p. 380.

Note numbered seven, given October 19, for the sum of $855.57, is for a balance of account which amounted at that time, as shown by Vansickle's ledger, to $641.68. The explanation given for this difference is, that the charges were made on the book at coin rates, and when the note was taken, one third was added to the account to make the note, payable in currency, the equivalent of $641.68 in coin. This note also includes in its amount $35.29 interest improperly and illegally charged in the account against Elder.

No direct proof was made of a specific agreement by Elder to pay coin, nor is there anything to establish such agreement beside the presumption arising out of the fact that business in this state is generally done on a coin basis. In the absence of a contract stipulating in terms for the payment of gold or silver, this book account was payable in currency.

To allow a debtor, on the eve of bankruptcy, to do what was done here, would lead to abuse, and enable a debtor by raising the demand of a creditor one third, to give such creditor a preference over others less favored. Suppose that another creditor had a claim on book account for $641.68, and the bankrupt refuses to make any note or agreement to pay in coin, or to raise it to such basis. This creditor can prove only $641.68, while the preferred one who gets the currency note, proves and receives dividends on $855.57. The latter then receives a preference equal to the dividend on the difference, $213.89.

I consider that Vansickle has illegally increased the amount of this portion of his claim, and it must be rejected for this illegality. So far as the notes, numbered 3, 4, 5 and 6, are concerned, if there was nothing against their validity, except the fact that they had been changed into currency from coin notes, which expressly stipulated for payment in coin, I should hold them to be valid. The better and correct practice, where a party has a demand by its terms payable in coin, is to prove it according to its terms.

The demand should then be entered on the books of the assignee as payable in coin, and the claimant would be entitled to receive his dividend thereon in the stipulated currency. The correctness of this rule is established, in my judgment, by the decision of the supreme court of the United States, in the case of Bronson v. Rodes, 7 Wall. [74 U. S.] 229, where it is held that "an express contract to pay coin dollars can only be satisfied by the payment of coin dollars," and that "when contracts made payable in coin are sued upon, judgment may be rendered for coined dollars and parts of dollars; when made payable in dollars, generally without specifying in what description of currency payment is to be made, judgment may be entered accordingly without such description."

Note numbered two, for $2,300, dated at Genoa, April 13, 1866, and note numbered one, for $1,350, dated at Carson City, June 7, 1867, both bearing two per cent. interest per month and payable in gold coin, the petitioners say are founded in fraud and illegality, and nothing else.

*[Giving due regard to the presumption of honesty which is made in favor of any one at the outset, after carefully and anxiously considering all the facts and circumstances proved, I am forced to the conclusion that these notes are illegal and fraudulent. I shall not attempt to state all the circumstances tending to this result, but will notice some. First, the two notes, although purporting to have been made at different towns, and in different years, are both written on what was, it is admitted, once one piece of paper. The notes themselves when examined show this. All of the experts agree that the two pieces of paper on which these notes are written were once one; that they appear to have been written under the same conditions, at the same time, with the same pen, the same ink, and by the same person. No satisfactory explanation was given of these circumstances.

[Elder says the notes were written and given to Vansickle on the days they bear date. Vansickle says, that he did not see either of them written; that Elder brought them to him, one in Genoa, the other in Carson: that he did not have the Genoa note with him when the Carson was given to him; that it was at that time at home in his safe. The consideration of these notes is stated generally by both Vansickle and Elder to be hay, barley, blacksmithing, and on account. The books containing this account are not produced, although Vansickle says that some of them could be, while others have been lost, or destroyed. Cosser speaks of seeing Elder give Vansickle a note in April or May, 1866;

---

* [From 3 N. B. R. 670 (Quarto, 165).]

says Vansickle and Elder were talking about money matters; that Vansickle told Elder he wanted a note; gave Elder a sheet of plain writing-paper, and Elder wrote the note, handed it to Vansickle, who folded it up and put it in his pocket. Van Cott says, that a year ago he saw notes similar in appearance to these and same amount, in Vansickle's safe. Blunt says, that in 1868 Van showed him a note against Elder for two thousand dollars and upwards, and told him he had many of that denomination.

[Vansickle testifies, that the note first given was not then stamped, that the second was not properly stamped, and that he put stamps on them at some time before Elder went into bankruptcy, but does not know when. Elder says the second note was stamped by Van in Carson, and that he saw it afterwards, and canceled the stamps himself; that the first note was not stamped for over a year after it was given. Taylor swore that he worked for Vansickle eighteen months prior to June, 1867; that he had examined the old books; that there was no account against Elder for more than sixty dollars, as he thinks; that he had access to the safe; had seen there notes of Mallory, Thompson, Noteware, and others, but never any note against Elder. Wencke, another bookkeeper, testifies that he never heard of this old debt against Elder as late as October 19, 1869.

[In the spring of 1868, Vansickle told Barker that Elder owed him one hundred and fifty or two hundred dollars; said nothing about these notes. In February, 1869, Vansickle told Bruso that Elder would owe by the 1st of March about seven thousand dollars, while if these notes are included the true amount was over eleven thousand dollars. About the 20th of October, 1869, Vansickle told Mallory that Elder owed him seven or eight thousand dollars, while if these notes were counted the true amount would have been thirteen or fourteen thousand dollars.

[To all this must be added the testimony as to the circumstances before and after the filing of his petition by Elder.

[Ten days before, Elder renews the three coin notes, giving currency notes in exchange as their equivalent, the computation being made on the basis that currency was worth seventy-five per cent. of coin; the interest of the new notes was double that of the old. Vansickle at the same time buys a claim against Elder of Farrell, raises the amount of that to currency, and takes a new note of Elder. At the same time, knowing Elder was about to break up, and for the purpose, as the witness Lynds says, of driving Elder away, Vansickle commences charging Elder double prices for everything furnished him, and takes the notes (No. 7 and 8) under the circumstances before stated, the last one the day before Elder filed his petition, and containing an estimate of what the teams would use during the rest of the month; Vansickle

saying, as one witness testified, that the teams would need that much before anybody else got them.

[The witness Wencke testifies that this was done because Elder was going to break up; that the double charges were made with a view to Elder's bankruptcy, and to secure a larger percentage, and gives the same reason for changing the coin notes into currency. Vansickle being chosen assignee, and about to sell the teams, went, on the morning of the sale, to Mr. Crosby, and wanted he should buy in the teams, promising to give him a load of hay if he would do so. Crosby was not to buy for himself, but for Mr. Lynds (Vansickle's agent)—the understanding was that he (Crosby) was not to bid against Mr. Lynds. Mr. Crosby did attend the sale, and bought two teams and some other property. Vansickle gave him a bill of sale, and Crosby gave one to Mr. Lynds. Vansickle sent Crosby the promised load of hay. Before going to Mr. Crosby, Mr. Vansickle went to Mr. Derby and asked him to bid in the stock. Mr. Derby declined, and referred Vansickle to Crosby. Mr. Derby testified that he judged from what Vansickle said, that the stock was to be purchased for Elder—that Vansickle wanted to assist Elder.

[Now, on his first examination, Vansickle stated that Crosby bought one team at the sale; that he did not know that Crosby bid it in for some one else; that he had no understanding with Crosby, and never gave him a cent. When recalled, subsequent to the witnesses Crosby and Derby, he admitted the conversation with Crosby and the sending of the load of hay. Aside from every other consideration, little regard can be given to the testimony of a witness who swears thus recklessly. Elder's testimony is still worse: he stated that he never offered to give either Mr. Bruso or Mr. Barton a note for more than was due them. These gentlemen both testified that he did offer to do so. Barton says Elder owed him two thousand dollars, and offered to give him a note for four thousand dollars.

[Elder states that about the 7th or 8th of October, 1869, he gave John Frazier a note for six thousand dollars, although he owed him only about one thousand four hundred dollars. He also admitted that on the 29th of October he sold a team (nine mules and one horse) to Frazier, who was to give it back when he (Elder) got "fixed;" that this was done with a view to breaking up.][4]

These notes, although purporting to have been made at different towns, and in different years, are both written on what was, it is admitted, once one piece of paper. The notes themselves, when examined, show this. All of the experts agree that the two pieces of paper on which they are written were once one; that they appear to have been written under the same conditions, at the

---

[4] [From 3 N. B. R. 670 (Quarto, 165).]

same time, with the same pen, the same ink and by the same person. No satisfactory explanation was given of these circumstances.

The whole testimony compels me to the following conclusions of fact: That the notes one and two are fraudulent and void as to the other creditors of the estate. That these two notes were made for the purpose of fraudulently enlarging the claim of Vansickle against the estate. That the transactions of October 19, and up to and including October 29, were done with a view to Elder's bankruptcy and for the purpose of giving Vansickle an undue advantage, under the bankrupt act, over the other creditors of Elder. That before and since the filing of Elder's petition and since Vansickle has been acting as assignee, there has been an understanding between Vansickle and Elder, having for its object their mutual benefit at the expense of the other creditors of the estate.

It only remains to determine what effect the fraudulent and illegal portion of this claim has upon that part of it which is admitted to be just, if separated from the other. From the language of sections 8, 22 and 24 of the act, and forms 66 and 68, it is evident that in a proper case, a claim may be allowed in part, or allowed or disallowed as a whole. What the action of the court will be, must depend in each case upon the circumstances of that particular case.

The object of the bankrupt law is to enable the honest debtor to obtain, by a full surrender of his property, a discharge from his debts, and to distribute to the honest creditors, pro rata, the property of the debtor. The law is full of provisions to prevent, not only actual frauds, but any act which tends to defeat its object. The thirty-ninth section provides that any creditor receiving any payment, gift, grant, sale, conveyance or transfer of money, or other property, estate, rights or credits from the bankrupt, he intending to give a preference, and such creditor at the time having reasonable cause to believe the debtor insolvent, shall not be allowed to prove his debt in bankruptcy. Here a creditor is debarred from proving his debt, if he has accepted part payment, however just his claim, or however free he might be of any actually dishonest motive in accepting this preference.

Can this court say that the creditor who deliberately commits a fraud upon the act, and the other creditors by other means, shall receive at his hands better treatment than this creditor who has accepted a preference from a debtor of a partial payment of a just debt? The conduct of Vansickle is fully within the spirit and intention of the prohibition and penalty of this section, if not strictly within its letter, and a thing clearly within the intention is within the law though not within the letter.

Every party to proceedings under the bankrupt law must be held to the utmost good faith; and he who attempts a fraud cannot, if discovered, complain, when made to abide by the legal consequences of his act. If the strict rules of other courts in adjusting the priorities of creditors are applied, this claim must fall as a whole. If a party having several just claims includes in his judgment one that is unjust, or one that is not yet due, or more interest than is due, his whole judgment, so far as it is a lien having priority over other creditors, will be postponed until the junior creditors are paid. Peirce v. Partridge, 3 Metc. (Mass.) 44.

Where one had obtained a judgment and included in it the amount of one note known to be fraudulent, it was argued that the judgment ought to stand for so much as was just, but the court said: The argument amounts to this—that a man having a just claim to a small sum, who should fraudulently bring forward claims to a much larger amount not due, and who should be detected, should be placed in as good condition, at least, as if he had not mixed the good and bad together. We think the law is directly the reverse, and that the fraud corrupts and destroys the whole. Fairfield v. Baldwin, 12 Pick. 388. This language is cited with approval by the supreme court of California, in a case where a party had taken judgment on five notes, one of which was not due. Taaffe v. Josephson, 7 Cal. 352. To permit Vansickle to now separate the good portion of his claim from the bad, and thus be put in as good condition as if he had attempted no wrong, would be contrary to well settled principles of law and to the plain requirements of the bankrupt act.

The order of the court, which the clerk will enter, is as follows: Upon the evidence submitted to the court upon the claim of Henry Vansickle against said estate of Geo. Elder, and upon hearing counsel thereon, it is ordered that said claim be disallowed and expunged from the list of claims upon the assignee's record in said cause.

It is further ordered that the said Henry Vansickle do pay the costs of this proceeding.